```
                UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT

Russell W. Sample,         :
      Plaintiff,           :
                           :
   v.                      :      File No. 2:04-CV-177
                           :
Jo Anne B. Barnhart,       :
Commissioner of Social     :
Security,                  :
      Defendant.           :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 4)

Plaintiff Russell W. Sample, proceeding *pro se*, brings this action challenging the method used by the Social Security Administration ("SSA") in calculating retirement benefits under Title II of the Social Security Act ("Act"). Specifically, Sample claims that by calculating benefits using the highest 35 years of a person's earnings, the Act discriminates against those who paid into the system for more than 35 years. Sample seeks to bring the complaint on behalf of himself and others similarly situated. (Paper 1).

The defendant has moved to dismiss Sample's complaint, arguing that the current formula has a rational basis and is therefore constitutionally valid. (Paper 4) For the

reasons set forth below, I agree that there has been no constitutional violation, and recommend that the Court GRANT the defendant's motion to dismiss (Paper 4).

### Factual Background

Sample was born in 1935, and worked in "covered employment" from 1952 through 2001. (Tr. 20, 36-37). In October, 2000, shortly before his 65th birthday, Sample applied for and was subsequently awarded social security retirement benefits. Because he continued to work in a self-employed capacity in 2001, the SSA informed him in 2002 that his retirement benefits would be increased by $2 per month to reflect his 2001 earnings. (Tr. 27). Sample sought review of the increase, and upon reconsideration the initial decision was affirmed. (Tr. 35-39). Sample then requested a hearing before an administrative law judge ("ALJ"). (Tr. 63).

At the hearing before the ALJ, Sample argued that a benefit increase of $2 per month for his 2001 earning must be a mistake, since he had paid $3,861.48 in social security taxes in that tax year. (Tr. 31). Sample further testified that he believed the formula for calculating

benefits should include all years of covered employment, and not just the 35 years of highest earnings. (Tr. 73). In support of his argument, he noted that a person who had worked for only 35 years, but had earned the same aggregate amount of money that Sample earned over 50 years, would receive a higher level of benefits. (Tr. 71-73). This difference, Sample claimed, constitutes discrimination in violation of the Fifth Amendment. (Tr. 74).

The ALJ ruled that Sample's benefits had been calculated correctly, and that he lacked the authority to decide the constitutional issue. (Tr. 9). Sample requested review by the Appeals Council, and review was denied on July 6, 2004. (Tr. 2). Sample filed his complaint in this Court on July 19, 2004.

## Discussion

I. Motion to Dismiss Standard

On a motion to dismiss, the Court must read the plaintiff's complaint with generosity. See Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Taking the allegations in the complaint as true, the court must construe the complaint in the light most favorable to

the plaintiff, and must draw all inferences in the plaintiff's favor.  See Warth v. Seldin, 422 U.S. 490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The complaint must not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

There is an important difference between disposing of a case on a motion to dismiss and resolving the case later in the proceedings, for example by summary judgment.  See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  On a motion to dismiss, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Id. (citations and internal quotation marks omitted).  Moreover, *pro se* complaints are to be construed more liberally than complaints drafted by trained attorneys.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

II.   Class Action

Sample seeks to bring this action on behalf of himself and a class of similarly situated retirees.  However, Sample cannot pursue a class action *pro se*.  See <u>McLeod v. Crosson</u>, 1989 WL 28416, at *1 (S.D.N.Y. Mar. 21, 1989) ("It is well settled in this circuit that *pro se* plaintiffs cannot act as class representatives.  They do not satisfy the requirements of Rule 23(a)(4).").  Under Rule 23(a)(4), a certified class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Because a non-lawyer typically lacks the legal know-how essential to safeguard the interests of a proposed class, courts generally refuse to certify a class represented by a *pro se* litigant.  See <u>Giorgio v. Tennessee</u>, 92 F.3d 1185, 1187 (6th Cir. 1996) (citing 7A Wright, Miller & Kane, Federal Practice and Procedure § 1769.1 n. 12 (2d ed. 1986)).  Accordingly, and to the extent that Sample's complaint is brought as a class action, I recommend that the complaint be DISMISSED.

III.   <u>Constitutional Standard</u>

Although Sample's complaint should not proceed as a class action, it may continue with respect to any harm that

5

he himself has allegedly suffered.  Sample claims that the current formula for calculating Social Security benefits is discriminatory under the Fifth Amendment.  When reviewing social welfare legislation like the Social Security Act, "the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611 (1960).  Similarly, there is no violation of the Equal Protection Clause "[i]f the classification has some reasonable basis."  Dandridge v. Williams, 397 U.S. 471, 485 (1970) (quotations omitted).  As the Second Circuit has explained,

> It is the responsibility of Congress, not the courts, to determine how public funds should be spent and how they should be raised.  Such legislative decisions are constrained by fiscal necessity.  Every desirable program cannot be funded, nor can the full needs of every funded program be met.  Lines must inevitably be drawn, and it is the legislature's province to draw them.  The choices made by the legislature will be upheld unless they are "clearly wrong, a display of arbitrary power, not an exercise of judgment."  Bowen v. Owens, 476 U.S. 340, 345, 106 S. Ct. 1881, 1885, 90 L. Ed. 2d 316 (1986) (quoting Mathews v. de Castro, 429 U.S. 181, 185, 97 S. Ct. 431, 434, 50 L. Ed. 2d 389 (1976)).

Brown v. Bowen, 905 F.2d 632, 634 (2d Cir. 1990).

Accordingly, this Court must determine whether the challenged method of calculating benefits has a rational basis, while at the same time giving deference to Congress and accepting the presumption that the legislative classification is valid.  Id. (citation omitted); see also Richardson v. Belcher, 404 U.S. 78, 84 (1971); Dandridge, 397 U.S. at 485 ("In the area of economics and social welfare, [Congress] does not violate the [e]qual [p]rotection [c]lause merely because the classifications made by its laws are imperfect.  If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'") (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911)); Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314 (1976) (legislative classifications are presumed valid).

IV.   Rational Basis

Sample contends that the current Social Security formula "benefits those employees with thirty-five or fewer years of contributions to the system.  Conversely, it

results in financial discrimination against the lower earning employee." (Paper 5 at 2).  Sample's allegation arises out of Congress's decision to base benefits on a complex wage averaging system, rather than a system based upon a person's total, lifetime earnings.  Pursuant to the standard of review set forth above, the question in this case is whether the formula chosen by Congress has a rational basis.

Congress established the Social Security system "to provide workers and their families with payments at an age when their earnings are likely to diminish by reason of old age or illness."  <u>Brown</u>, 905 F.2d at 636 (citing <u>Mathews</u>, 429 U.S. at 186).  From its earliest years, the Social Security formula for calculating benefits was designed to provide a "reasonable relationship between past earnings and future benefits."  H. Rep. No. 728, 76th Cong., 1st Sess., "Social Security Act Amendments of 1939," at 13.  The formula was also intended to provide "proportionately greater protection for the low-wage earner and the short-time wage earner than for those more favorably situated."  <u>Id.</u>  The 1939 Amendments to the Social Security Act

8

explained that these two, and potentially conflicting, goals "recognize[d] the principle of individual equity, as well as the principle of social adequacy."  Id. at 14.

Under the current formula, only a person's highest 35 years of earnings are factored into the benefit calculation.  This figure arose out of several developments in the Act.  Initially, the Social Security Act of 1935 provided that "old-age" benefits were to be calculated based upon total wages earned after December 31, 1936 and before the age of 65.  See Social Security Act, Pub. L. No. 74-271, § 202(a)(1).  In 1939, Congress introduced the concept of the average monthly wage, and weighted the benefits in a way that would provide "proportionately greater protection for the low-wage earner."  H.R. 728, 76th Cong., 1st Sess., "Social Security Act Amendments of 1939," at 13.  As noted above, Congress determined that such weighting was appropriate as a matter of "social adequacy." Id. at 14.  With respect to the use of an average rather than a total wage formula, Congress explained that

> [a]n average wage formula will relate benefits more closely to normal wages during productive years.  Since the object of social insurance is

9

> to compensate for wage loss, it is imperative
> that benefits be reasonably related to the wages
> of the individual.  This insures that the cost of
> the benefits will stay within reasonable limits
> and that the system will be flexible enough to
> meet the wide variations in earnings which exist.

Id. at 10.  The 1939 Amendments also excluded quarters of low earnings before the age of 22.  See Amendments to Title I of the Social Security Act, Pub. L. No. 76-379, § 209(f).

In 1954, Congress introduced "dropout years" to the calculation of benefits.  See Pub. L. No. 83-761, § 102, reprinted in 1954 U.S.C.C.A.N. 1242, 1255.  The purpose of "dropout years" was to exclude years of low or no earnings so that "'average earnings [would] not be pulled down by the very lowest years during the potential lifetime.'" (Paper 4 at 8, citing Myers, Social Security (Pension Research Council and Univ. Of Penn. Press, 4th Ed., 1993) at 69).  Consequently, in 1956 Congress determined that five years of low or no earnings would be dropped from the computation of benefits.  See Pub. L. No. 84-880, § 109, reprinted in 1956 U.S.C.C.A.N. 942, 970-71.

Subsequent amendments to the Act established that earnings would be eligible for incorporation into the

10

benefits formula after a worker turned 21, and before he reached the age of retirement eligibility.  See Pub. L. No. 86-778, § 303, reprinted in 1960 U.S.C.C.A.N. 1299, 1343.  The age of eligibility is currently 62.  Thus, the maximum number of earning years for purposes of the benefit calculation is 40.  Subtracting 5 dropout years, the government calculates benefits based upon the highest 35 years of earnings.  See 42 U.S.C. § 415(b).

As discussed above, Sample argues that the use of only 35 years discriminates against workers who paid into the Social Security system for more than 35 years.  The history of the Act, however, shows that the benefits formula has always been based upon wages, and not the amount of Social Security taxes paid.  As the 1939 Congress clearly stated, benefits were tied to past wages because "the object of social insurance is to compensate for wage loss."  H. Rep. No. 728, 76th Cong., 1st Sess., "Social Security Act Amendments of 1939," at 13.  Accordingly, the use of an averaging system is not arbitrary, and is instead based upon the rational goal of providing wage insurance for people after they become ill or retire.

Similarly, the use of 35 years is not arbitrary. Congress initially discounted low earnings in the years prior to age 22, then determined that all earnings under the age of 21 should be left out of the calculation. Age 62 has long been the retirement age, and Sample does not appear to be challenging the use of age 62 as the milestone for benefits eligibility. Thus, forty years of earnings is a well-established starting point for calculating benefits. By using only earnings after age 21, and then applying the five "dropout years" of low earnings, the averaging system developed by Congress treats all workers the same, and may even benefit those with more than 35 years of work experience.

For example, and as the ALJ determined in Sample's administrative appeal, "if all of the claimant's indexed earnings were averaged over his entire 50-year work history, the resulting calculation would produce a [benefit amount] . . . $92.60 less than his [benefit amount] as calculated under the existing regulatory formulas." (Tr. 10). The fact that Sample has more than 35 years of earnings simply means that he has had significant

12

opportunity to replace low-earning years with higher-earning years, thereby increasing his retirement benefit. While it may be true that an aggregate income formula might be even more advantageous to Sample when compared to persons with fewer wage-earning years, an aggregate system is not what Congress has designed.  Congress has clearly set forth a formula of wage averaging over a set period of years, and has done so in a way that is deliberate and rational.  Therefore, I find that the formula for calculating benefits under the Act is constitutional.

   Because I conclude that the benefits formula under the Act is constitutional, I also find that Sample has no basis for challenging the $2.00 increase to his monthly benefits arising out of his 2001 income.  Sample contends that there must be a mistake, since he contributed $3,861.48 to Social Security taxes in 2001.  (Tr. 31).  As the defendant properly argues, however, the computation of benefits has not been designed as a "payback" taxes.  (Paper 4 at 14). As discussed above, the system was primarily designed as a system of government-sponsored wage replacement for times of old age or illness.  The Congressionally designed

13

formula for implementing this system is presumed valid, and Sample's arguments have failed to show that the current system is "clearly wrong, a display of arbitrary power, [and] not an exercise of judgment."  Brown, 905 F.2d at 635; see also Rudykoff v. Apfel, 193 F.3d 579, 580 (2d Cir. 1999) (affirming constitutionality of a different portion of the Social Security Act).  For these reasons, I recommend that the defendant's motion to dismiss (Paper 4) be GRANTED, and that this case be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that the defendant's motion to dismiss (Paper 4) be GRANTED and this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 17th day of March, 2005.


                                   /s/ Jerome J. Niedermeier
                                   Jerome J. Niedermeier
                                   United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings,

recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).